UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

COLLEEN A. REYNOLDS,

    Plaintiff,

    v.                                            Case No. 09-C-0537

MICHAEL J. ASTRUE,

    Defendant.

---

DECISION AND ORDER REMANDING THE DECISION OF THE COMMISSIONER

        Plaintiff, Colleen A. Reynolds, filed this action seeking judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Reynolds protectively filed applications on December 16, 2005, alleging disability as of February 24, 2005, due to a back and anxiety disorder. After her applications were denied initially and upon reconsideration, Reynolds timely requested a hearing. She appeared at the hearing on July 17, 2008, with her attorney, Thomas Bush, and vocational expert, Beth A. Hoynik, testified at the ALJ's request.

        ALJ Gregory S. Pokrass issued his decision on September 2, 2008, denying Reynolds' application for benefits. The Appeals Council denied Reynolds' timely request for review and the ALJ's decision became the final decision of the Commissioner. *See Schmidt v. Astrue,* 496 F.3d 833, 841 (7th Cir. 2007).

BACKGROUND

Reynolds, who was born in 1956, completed high school and was 50 years old on her application date. (R. 82, 13, 21, 23, 94.) She had worked as a cook, caretaker, and house cleaner. (r. 403-404.) An extensive summary of her medical evidence is in the record as Appendix A to her brief, and there are no issues on appeal regarding the ALJ's discussion of this evidence.

The one hour July 17, 2008, hearing resulted in twenty pages of testimony from Reynolds and approximately twenty pages of testimony from Beth Hoynik, the vocational expert. (R. 382-422.) During the hearing, the ALJ presented Hoynik with a hypothetical involving a person 51 years old, with a high school education, who was limited to sedentary and unskilled work with "bilateral manipulation no more than frequent and a 30-minute sit/stand change of position that assumes it can be done at the workstation without a loss of productivity." (R. 403-404.) Hoynik believed that such an individual could not engage in past relevant work. However, under that hypothetical, an individual could perform general production work (8,400 light and 2,000 sedentary packaging and hand packing jobs), general assembly work (8,200 light and 1,500 sedentary jobs) and packaging and hand packaging work (4,000 light and 1,500 sedentary jobs). (R. 404-405.). No Dictionary of Occupation Titles (DOT) numbers were requested or provided. (R. 405.)

After this testimony, the following exchange took place:

ATTY: Okay. But how do you – I mean, I understand that. What I don't understand is how you can come up with the numbers. I mean it's not based on the DOT.

ALJ: Why don't you tell –

2

| | | |
|---|---|---|
| ATTY: | And – | |
| ALJ: | him – because this comes up all the time. Every hearing, every VE comes up with numbers, so let's cut to the chase and – | |
| ATTY: | No. | |
| ALJ: | –tell Mr. Bush for the record so that if he needs to appeal he can appeal on the issue. Tell him where your numbers come from. | |

(R. 408.)

Hoynik responded that the numbers "initially come from the Department of Labor and the Bureau of Labor Statistics." (R. 409.) Reynolds' attorney noted that the Hoynik had printouts she was relying upon and asked for an example of the numbers, such as where they reflect 4,000 jobs for hand packaging. (*Id.*) Hoynik explained that "you'd have to go back to the rankings that are on the ONET online (Occupational Information Network). You would go the State of Wisconsin and you would extrapolate from what they estimate the jobs to be." (*Id.*) In response to the ALJ's questions, she further explained:

> It's a mixture of the two different systems that are coming together. The new system does actually rank in terms of how much a person stands and sits in terms of a percentage, and I look at how many of the jobs overall based on the old system and the new system are to be more sitting or more standing to determine what's light and what is sedentary type work.

(R. 411.)

Reynolds' attorney inquired as to how many unskilled hand packager jobs there were in Wisconsin. (*Id.*) Hoynik responded that she did not know if they were the most recent figures but believed it to be somewhere around 24,000. (R. 411.) Continuing,

Hoynik provided the census codes for the hand packer occupations, and stated that there wouldn't be one direct DOT with those positions. (R. 413.)

Next, the ALJ broke in and instructed Hoynik to provide Reynolds' attorney with a code. Reynolds' attorney then requested that Hoynik provide the code for light hand packager jobs. Hoynik responded with the DOT code of 920.687-122, a machine pack assembler with an SVP of 3 (semi-skilled), but admitted that under the new system all of these are unskilled. (R. 413-414.)

When Reynolds' attorney asked how many employers provide a stool at the right height for the sit/stand option, the ALJ interjected:

> ALJ: She doesn't know that. Now, listen. I'm not going to let this go too far. Mr. Bush, this is pointless. The issue is not the number of light jobs. Are you seriously contesting that there are light jobs in this – don't look so befuddled for gosh sakes. We know there are light jobs. The issue is what this lady is at. That's the real issue in the case. This is a red herring. Make your case for your appeal. You have six minutes –
>
> ATTY: Okay.
>
> ALJ: – then I'm cutting it off for the next hearing. Go. Six minutes right –
>
> ATTY: Okay.
>
> ALJ: – now.
>
> ATTY: It is.
>
> ALJ: And I'm losing patience. Do not say another word to me, sir.
>
> ATTY: Okay.

4

| | |
|---|---|
| ALJ: | Ask this lady what you want to ask. Make your case now. |
| ATTY: | Okay. |
| ALJ: | You're trying my patience. |
| ATTY: | I understand that. |
| ALJ: | No, you don't. Get moving. |

(R. 414-415.)

Reynolds' attorney then asked Hoynik to explain how she took the numbers from the ONET, which is based on census codes and figured out how many light jobs allow alternate sitting and standing. (R. 415.) Hoynik responded that what she looks at is "based on a number of different things." First, she looks at how the titles are contained and how they fall within a range of sedentary, light, medium, and heavy in terms of percentages. Second, she looks at the new ONET rankings with regard to the percentages for working individuals who spend time sitting, standing, walking, and moving around. Third, she looks to her own records and personal research and comes up with who does what kind of work based "on the actual economic and jobs that are being performed here in the local economy." (R. 415-416.) She clarified that the local economy is southeastern Wisconsin. (R. 417.)

Hoynik described her research as "ongoing." (R. 417.) She looked at "a collection of the information" that she had "gleaned over a number of different resources." (*Id.*) Hoynik stated that she had visited several employers approximately nine months before, but initially refused to give any examples of the place she had visited. (R. 418.) Eventually she gave an example of a plastics factory she had visited to observe the

5

assembly work performed and the proportion of work done sitting and standing. The VE explained that she is looking at "are they putting together small, little plastic parts? Is someone running an injection molding machine? How is it all put together and who's doing what at any particular company?" (R. 420.) At that point, the ALJ cut off all testimony, but agreed to hold the record open for fifteen days pending a brief. (*Id.*)

STANDARD OF REVIEW

A district court's review of a social security appeal is limited to determining whether the ALJ's decision is supported by substantial evidence and based on the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). The court reviews the entire record but does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir.1998). However, "[i]n coming to his decision ... the ALJ must confront evidence that does not support his conclusion and explain why it was rejected." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). The ALJ's findings of fact, if supported by substantial evidence, are conclusive. *Scheck*, 357 F.3d at 699. Substantial evidence is such relevant evidence as a reasonable person could accept as adequate to support a conclusion. *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001).

The only issue on appeal is whether the ALJ erroneously relied on unsupported vocational testimony resulting in a flawed step five determination. It is the Commissioner's burden at step five to establish that the plaintiff's RFC allows her to engage in work found in significant numbers in the economy. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c). When the Commissioner satisfies this burden through the use of vocational

6

expert testimony, that testimony must be reliable. *Britton v. Astrue*, 521 F.3d 799, 803-04 (7th Cir. 2008); *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004); *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) ("Evidence is not 'substantial' if vital testimony has been conjured out of whole cloth.").

The standards by which an expert's reliability is measured may be less stringent at an administrative hearing than under the Federal Rules of Evidence. *McKinnie*, 368 F.3d at 910 (citing *Donahue*, 279 F.3d at 446). A vocational expert is "free to give a bottom line," but the data and reasoning underlying that bottom line must be "available on demand" when the claimant challenges the foundation of the vocational expert's opinions. *Id.*, 368 F.3d at 911. If the basis of the vocational expert's conclusions is questioned, then the administrative law judge should undertake an inquiry into the reliability of the purported expert's conclusions. *Id.*

Here, the ALJ predicated the denial of benefits on Hoynik's testimony that significant jobs exist in the national economy that Reynolds can perform. The ALJ quoted Hoynik that, given all the factors, Reynolds could perform 8,400 general production jobs, 8,200 general assembly jobs, and 1,500 hand packing jobs. Moreover, the ALJ commented that the testimony was "consistent with the information contained in the Dictionary of Occupational Titles, according to the expert." Additionally, the ALJ wrote:

> It should be noted that the claimant's attorney engaged in questioning of the vocational expert that the undersigned eventually limited pursuant to this authority to regulate the hearing. The apparent purpose was to convince the undersigned that there are an insignificant number of jobs under the above RFC. While counsel's skilled advocacy on behalf of his client is appreciated, the undersigned views this as a tangential matter (a "side issue" as exhibit 3B puts it). The numerous vocational experts who have appeared before

7

> the undersigned have universally found similar job
> types/numbers for similar claimants under similar functional
> capacities. The real issue here, against as exhibit 3B notes, is
> whether this light-based RFC indeed represents this claimant's
> capacity.

(R. 22.)

Reynolds' attorney challenged Hoynik's foundation, specifically stating that he did not understand how Hoynik came up with the numbers. Although the ALJ instructed Hoynik to tell Reynolds' attorney where her "numbers come from," the ALJ did little to inquire into the reliability of the testimony. The numbers came from a combination of the DOT, ONET, and "personal experience." However, how that combination of sources allows her to arrive at the numbers is unclear. Hoynik said that she "extrapolates" and conducts her own research "gleaned over a number of different resources," and cited visits to several unidentified employers approximately nine months before.

The ALJ unquestionably relied on the testimony, finding the numbers consistent with the DOT "according to the expert." However, the Commissioner admits that the ALJ neglected to inquire as to the consistency of the DOT. Indeed, the DOT job code for machine pack assembler, which was provided by the ALJ, is inconsistent with the ALJ's RFC limitation to frequent bilateral manipulation. Moreover, the VE did not address the lack of a sit/stand option in the DOT. Thus, the relevant inquiry was never performed and Reynolds' attorney highlighted these inconsistencies in the post-hearing submissions, which were not addressed in the decision. To the extent that the ALJ's findings are inconsistent with or otherwise not supported by reliable testimony, the court cannot find that the decision was supported by substantial evidence. *See Overman v. Astrue*, 546 F.3d 456, 465 (7th Cir. 2008).

8

Case 2:09-cv-00537-CNC   Filed 07/21/10   Page 8 of 9   Document 24

Further undermining the Commissioner's position that the ALJ conducted a sufficient inquiry is that the ALJ abruptly ended the questioning by Reynolds' attorney and repeatedly expressed frustration with the attorney's attempts to ascertain the bases for the numbers. The ALJ made statements such as "[a]re you seriously contesting that there are light jobs?," "[w]e know there are light jobs," "every hearing, every VE comes up with a number," while referring to the job numbers at step five as "tangential" and a "red herring." Such comments as these suggest that a determination regarding whether significant jobs exist in the economy was made prior to Hoynik's testimony. And, because the commissioner bears the burden at step five, remand is required to ensure that the vocational expert's testimony was reliable and that the Commissioner's decision is based upon substantial evidence. Now, therefore,

IT IS ORDERED that the decision of the Commissioner is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

Dated at Milwaukee, Wisconsin, this 21st day of July, 2010.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE

9